# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DON ADAMS and THERESA ADAMS, Plaintiffs, | : : : : : : : : : | CIVIL ACTION<br><br>NO. 99-4910 |
| v. | | |
| TEAMSTERS LOCAL 115, EDWARD G. RENDELL, and INTERNATIONAL BROTHERHOOD of TEAMSTERS, Defendants. | | |

## MEMORANDUM AND ORDER

YOHN, J.                                                                July ___, 2007

Plaintiffs Don and Theresa Adams brought a civil rights action along with supplemental state law claims arising out of plaintiffs' protest at a rally in support of former President William Jefferson Clinton.  Currently before the court are motions for attorney fees and costs brought by defendants Teamsters Local 115 ("Local 115") and the International Brotherhood of Teamsters ("IBT") (collectively, "Teamsters"), as well as plaintiffs' appeal from the clerk of court's taxation of costs against plaintiffs in favor of the IBT, Local 115 and former Philadelphia Mayor Edward G. Rendell ("Mayor Rendell").  For the reasons stated herein, the Teamsters' motions for attorney fees will be denied and plaintiffs' appeal from the clerk of court's taxation of costs will be denied in part and granted in part.

1

**I. Background**

Plaintiff originally brought suit against defendants Philadelphia District Attorney Lynne Abraham, Mayor Rendell, Local 115, then Secretary-Treasurer of Local 115 John Morris, Morris's former Chief-of-Staff, Kenneth J. Woodring Jr., the IBT, and certain members of Local 115.  On January 24, 2001, the Honorable Bruce W. Kauffman of this court dismissed the following claims from the first amended complaint:  1) Section 1983 claims for unlawful prosecution violating the Fourth Amendment (listed in the first amended complaint as Counts II and III); 2) Section 1985 (2) and (3) claims (listed in the first amended complaint as Counts IV and V); and 3) a Section 1986 claim (listed in the first amended complaint as Count VI).  Furthermore, the court dismissed pending counts against the following defendants:  1) Mayor Rendell (dismissing the defamation and false light/invasion of privacy claims) and 2) District Attorney Lynn Abraham (dismissing all claims).  *See Adams v. Teamsters Local 115*, No. 99-4910, slip. op. (E.D. Pa. Jan. 23, 2001).  As a result of this decision, on August 2, 2001, plaintiffs amended their complaint for a second time in an effort to clarify specific claims against Mayor Rendell and to remove counts and allegations that the court had dismissed.  On August 6, 2003, after the case was reassigned to me, I granted summary judgment against plaintiffs on their § 1983 claim for violation of their First Amendment right of free speech, finding that there was insufficient evidence that Mayor Rendell made an agreement with the Teamsters to assault plaintiffs.  *See Adams v. Teamsters Local 115*, 2003 U.S. Dist. LEXIS 15477 (E.D. Pa. Aug. 6, 2003).  Further, because summary judgment on the only remaining federal claim had been granted in favor of defendants, I dismissed without prejudice plaintiffs' supplemental state law claims pursuant to 28 U.S.C. § 1367.  *Id.*

2

On September 18 and 19, 2003, Local 115 and the IBT, respectively, filed motions for attorney fees and costs pursuant to 42 U.S.C. § 1988.  I initially denied the motions without prejudice to the IBT and Local 115 to reinstate the motions after disposition of plaintiffs' appeal to the Third Circuit.  The Third Circuit affirmed the judgments of the district court on January 22, 2007, *Adams v. Teamsters*, 214 F. App'x 167 (3d Cir. 2007) (not precedential), and the motions were reinstated.  Plaintiffs filed a supplemental memorandum of law in opposition to the motions; neither defendant responded or filed amended briefs concerning that memorandum.

The IBT, Local 115 and Mayor Rendell also filed bills of costs with the clerk of court, pursuant to Federal Rule of Civil Procedure 54(d).  On May 14, 2007, the clerk of court entered costs against plaintiffs noting that plaintiffs had not filed requested objections.  As allowed by Rule 54(d)(1) and Local Rule 54.1(b), plaintiffs objected to the taxation of costs.  The Teamsters have filed a joint reply to which plaintiffs have responded.

Plaintiffs raise a multitude of arguments in opposition to the award of attorney fees and the taxation of costs in favor of defendants.  In the discussion that follows, I will set forth the standards applicable to the award of attorney fees and costs, respectively, and address each of plaintiffs' contentions.[1]

---

[1]Plaintiffs do not divide their arguments relating to attorney fees and costs.  However, because different standards apply to the award of attorney fees and costs, in my discussion I will separate arguments related to each category of expenses and I will treat any cost-related arguments plaintiffs assert in their appeal from the clerk of court's taxation of costs together with any remaining cost-related arguments plaintiffs raise in their original papers.

**II. Attorney Fees**

**A. Legal Standards for § 1988 Attorney Fee Awards**

Section 1988 states:  "In any action or proceeding to enforce a provision of sections . . . 1983, 1985, and 1986 of this title . . . the court, in its discretion, may allow the prevailing party, . . . a reasonable attorney's fee as part of the costs . . . ."  42 U.S.C. § 1988.  In *Public Interest Research Group v. Windall*, the Third Circuit noted that "[c]ourts have broadly defined 'prevailing party' for purposes of triggering the application of a fee shifting statute."  51 F.3d 1179, 1185 (3d Cir. 1995).  The court went on to specify, citing the Supreme Court's decision in *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983), that:  "A typical formulation is that plaintiffs may be considered 'prevailing parties' for attorneys' fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit."  *Pub. Interest Research Group*, 51 F.3d at 1185 (internal quotation omitted); *see also id.* ("The test . . . to determine prevailing party status is whether plaintiff achieved some of the benefit sought by the party bringing suit.") (citing *Metro. Pittsburgh Crusade for Voters v. City of Pittsburgh*, 964 F.2d 244, 250 (3d Cir. 1992)).  In the context of the same standard under Federal Rule of Civil Procedure 54(d), the Third Circuit held in a not precedential opinion: "Where a defendant successfully defends against a plaintiff's substantial claims and judgment is entered accordingly, the defendant is generally considered the prevailing party."  *Tyler v. O'Neill*, 112 F. App'x 158, 161 (3d Cir. 2004) (not precedential) (citing *Russian River Watershed Prot. Comm. v. City of Santa Rosa*, 142 F.3d 1136, 1144 (9th Cir. 1998)); *see also Beam v. Downey*, 151 F. App'x 142, 144 (3d Cir. 2005) (not precedential) (determining that defendants were prevailing parties, defined as "one that 'succeeded on any significant issue in litigation which

4

achieves some of the benefits the parties sought in bringing suit,'" where "they succeeded in having each claim dismissed" (quoting Hensley, 461 U.S. at 433)).

As described, a prevailing party may either be a plaintiff or a defendant; however, the standard for awarding attorney fees to prevailing defendants is more stringent than the standard for prevailing plaintiffs. *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421 (1978). In *Christiansburg*, the Supreme Court recognized that different justifications govern the award of attorney fees to plaintiffs and defendants. *Id.* at 418-20.[2] Specifically, "the plaintiff is the chosen instrument of Congress to vindicate a policy that Congress considered of the highest priority, . . . and when a district court awards counsel fees to a prevailing plaintiff, it is awarding them against a violator of federal law." *Id.* at 418-19 (quotations omitted). In assessing attorney fees against a plaintiff, Congress was endeavoring "to protect defendants from burdensome litigation having no legal or factual basis." *Id.* at 420. Thus, whereas "a prevailing plaintiff . . . 'should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust," a prevailing defendant is not entitled to attorney fees "unless a court finds that [the plaintiff's] claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so." *Id.* at 416-17, 422. "Nevertheless, it is not necessary that the prevailing defendant establish that the plaintiff had subjective bad faith in bringing the action in order to recover attorney's fees. Rather, the relevant standard is objective." *Barnes Found. v. Twp. of Lower Merion*, 242 F.3d 151, 158 (3d Cir. 2001) (citing *Hughes v. Rowe*, 449 U.S. 5, 14 (1980)).

_____

[2]Although *Christiansburg* concerned an action brought under Title VII of the Civil Rights Act of 1964, "[t]he standards for assessing claims for attorney's fees pursuant to section 1988 and under the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(k), are identical." *Barnes Found. v. Twp. of Lower Merion*, 242 F.3d 151, 158 n.6 (3d Cir. 2001) (citations omitted).

However, the Third Circuit resolved, "It is clear from *Christiansburg* that attorney's fees [to a prevailing defendant] are not routine, but are to be only sparingly awarded." *Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 503 (3d Cir. 1991); *see also EEOC v. L.B. Foster Co.*, 123 F.3d 746, 751 (3d Cir. 1997); *Kutska v. Cal. State College*, 564 F.2d 108, 110-11 (3d Cir. 1977) (noting that courts should be cautious in awarding fees against plaintiffs for fear of chilling effective enforcement of undecided issues). The Supreme Court has specifically cautioned that it "is important that a district court resist the understandable temptation to engage in post hoc reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation." *Christiansburg*, 434 U.S. at 421-22; *see also*, *Hughes*, 449 U.S. at 15-16 ("Allegations that, upon careful examination, prove legally insufficient to require a trial are not, for that reason alone, 'groundless' or 'without foundation' as required by *Christiansburg*.").

The Third Circuit has provided some guidance for making determinations under the *Christiansburg* standard. The court has noted that cases that were frivolous "typically have been decided in the defendant's favor on a motion for summary judgment or a motion for involuntary dismissal." *L.B. Foster Co.*, 123 F.3d at 751 (internal quotation omitted) (citing *Sullivan v. Sch. Bd.*, 773 F.2d 1182, 1189 (11th Cir. 1985)). Factors the Third Circuit has determined are appropriate for consideration in awarding counsel fees to a defendant include: (1) whether the plaintiff established a prima facie case; (2) whether the defendant offered to settle; (3) whether the trial court dismissed the case prior to trial or held a full-blown trial on the merits; (4) whether the question at issue was one of first impression requiring judicial resolution; and (5) whether the controversy is based sufficiently upon a real threat of injury to the plaintiff. *Barnes Found.*, 242 F.3d at 158; *L.B. Foster Co.*, 123 F.3d at 751. However, the court has cautioned that these

factors "are merely guidelines, not strict rules." *L.B. Foster Co.*, 123 F.3d at 751.  Consequently, "[d]eterminations regarding frivolity are to be made on a case-by-case basis." *Barnes Found.*, 242 F.3d at 158 (citing *Sullivan*, 773 F.2d at 1189).

### B. Discussion

### 1. Prevailing parties

Plaintiffs contend that defendants are not prevailing parties as required by § 1988.  In essence, plaintiffs argue that this is so because plaintiffs' nonmeritorious federal claims are not properly severable from their unadjudicated state law claims–which claims will likely be meritorious in state court.  (Pl. Opp'n Att'y Fees 6-10.)  In particular, plaintiffs assert that the costs and fees for the Teamsters to litigate the federal claims are one and the same as those for litigating the factually identical and legally related state law claims upon which no final decision has been rendered.  (*Id.* at 10.)  In other words, because defendants are not entitled to fees for plaintiffs' state law claims, which are interwoven with plaintiffs' federal claims, they also cannot be entitled to fees for plaintiffs' federal claims.

Plaintiffs' argument is not persuasive for several reasons.  First, both defendants have made clear they are not seeking fees and costs associated with the defense of plaintiffs' state law claims and do not quibble with plaintiffs' assertion that the Teamsters are not entitled to prevailing party costs for those unresolved claims.  (Local 115's Mem. Supp. Att'y Fees 8; IBT's Mem. Supp. Att'y Fees 3.)  More important, the Third Circuit has resolved that success on a related state law claim where the plaintiff is unsuccessful on the merits of the federal claim does not render a plaintiff a "prevailing party" and, moreover, does not preclude a defendant from being a prevailing party.  *See Luria Bros. & Co. v. Allen*, 672 F.2d 347, 357-58 (3d Cir. 1982).

In *Luria Brothers*, the Third Circuit held, contrary to the district court, that there had been no constitutional violation and therefore the plaintiff had no § 1983 claim. *Id.* at 354. The court, however, affirmed the district court's finding in favor of the plaintiff on its related state law claim. *Id.* at 356. The court then addressed the following question: "if, as a result of an adjudication, one is the losing and not the prevailing party on a § 1983 claim, may he be entitled nevertheless to attorney's fees on the strength of his success on a related state law claim?" *Id.* at 357. The Third Circuit answered in the negative, but distinguished this situation from one in which a plaintiff prevailed on both related federal and state claims as well as one in which the court declined to pass upon a constitutional issue. *Id.* Significant to the instant case, the panel went on to observe that the *defendant* in this scenario could potentially be entitled to "prevailing party" fees on the plaintiff's unsuccessful federal claim, if that claim were found to be "frivolous, unreasonable, or groundless." *Id.* at 358 n.18.

Thus, defendants are prevailing parties in this case as plaintiff was unsuccessful on all federal claims. *See id.* at 357-58 & n.18; *see also Beam*, 151 F. App'x at 144 (concluding that the defendants "were the prevailing parties because they succeeded in having each claim dismissed"); *Curran v. SEPTA*, 109 F. Supp. 2d 394, 396 (E.D. Pa. 2000) ("Defendants SEPTA, et al., were unquestionably the 'prevailing party,' as summary judgment was granted in their favor on plaintiff's § 1983 claim, and the state claim was dismissed without prejudice."). As such, I will next turn to whether plaintiffs' claims were frivolous, unreasonable or groundless within the *Christiansburg* standards.

## 2. Application of *Christiansburg* standard

The Teamsters[3] argue that plaintiffs' federal claims were frivolous within the meaning of the *Christiansburg* standard and apply the factors outlined above.  The Teamsters point out that the vast majority of plaintiffs' federal claims were disposed of by the motion to dismiss[4] and defendants were granted summary judgment as to the remaining federal claim.  (Local 115's Mem. Supp. Att'y Fees 4, 6.)  Further, the Teamsters assert that plaintiffs failed to establish a prima facie case with respect to Counts II, III, IV, and VI of the first amended complaint and none of the claims involved questions of first impression.  (*Id.* at 6.)  The Teamsters argue that the suit was not based on a real threat of injury to plaintiffs and any injuries plaintiffs sustained were compensable solely through state causes of action.  (*Id.*)  The Teamsters also note that although the court did not make a finding that the suit was frivolous, plaintiffs were taken to task for arguing that *New York Times v. Sullivan*, 376 U.S. 254 (1964), supported their First Amendment claim.  (*Id.* at 6-7.)  Lastly, the Teamsters argue, given the total absence of factual support for plaintiffs' assertions, the claims were groundless.  (*Id.* at 7.)

A § 1988 fee award to a defendant is proper for distinct frivolous claims even where they are joined with non-frivolous claims.  *Tutor-Saliba Corp. v. City of Hailey*, 452 F.3d 1055, 1062-

---

[3]The IBT's and Local 115's motions are substantively alike, the IBT's brief being an abbreviated version of Local 115's brief; therefore, I will often address them together.

[4]In their memoranda in support of the motions, both the IBT and Local 115 explain that they are not seeking attorney fees in connection with plaintiffs' state law claims, as those claims have been dismissed without prejudice. (Local 115's Mem. Supp. Att'y Fees 8; IBT's Mem. Supp. Att'y Fees 3.)  Thus, Local 115 has chosen not to submit attorney fees and costs accrued before the motion to dismiss was adjudicated.  (Local 115's Mem. Supp. Att'y Fees 8.)  The IBT, however, purports to have separated fees and costs associated with plaintiffs' state law claims and seeks fees and costs for defending against plaintiffs' federal claims throughout the litigation. (IBT's Mem. Supp. Att'y Fees 3.)

64 (9th Cir. 2006); *see also* 45D Am. Jur. 2d *Job Discrimination* § 2703 (stating that "when only one of a plaintiff's numerous claims is frivolous, the defendant may be awarded fees for the defense against that claim only, even though the defendant has prevailed on all claims"). Accordingly, I will examine each of the relevant claims to determine whether they were frivolous, unreasonable or groundless within the meaning of *Christiansburg*.

The IBT is the only defendant purportedly seeking attorney fees in connection with defending against plaintiffs' motion to dismiss.  *See supra* note 4.  The counts that were dismissed by the court's order of January 24, 2001 relevant to the IBT are Counts II, III, IV, V, and VI.  *See Adams*, No. 99-4910, slip. op.  The dismissal of Count II  hinged on plaintiffs' failure to meet the constitutional threshold of a "seizure" for purposes of a malicious prosecution claim under the Fourth and Fourteenth Amendments, and the availability of a state remedy for malicious prosecution that precluded plaintiffs' Fourteenth Amendment claim. *Id.* at 9-12. Count III for failure to train was subsequently dismissed because there was no alleged constitutional violation–malicious prosecution–upon which it could be based.  *Id.* at 13.  As to the seizure at issue, the court was faced with making an inquiry as to whether Don Adams's seizure met the threshold required by the Third Circuit's opinion in *Gallo v. City of Philadelphia*, 161 F.3d 217 (3d Cir. 1998).  *Id.* at 10.  While ultimately the court found that it was clear that the restrictions imposed upon Don Adams could not support a malicious prosecution claim, I do not find that Counts II and III were frivolous, unreasonable or groundless within the meaning of *Christiansburg*.

In any event, even if I were to deem plaintiffs' malicious prosecution and failure to train claims frivolous within the meaning of *Christiansburg* because Don Adams was not "seized," the

IBT's motion to dismiss did not address that issue.  The IBT's motion nowhere addressed the constitutional prerequisites for a malicious prosecution or failure to train claim, but rather argued that the IBT was not an actual participant in the asserted factual allegations and made fact-related arguments.  (*See* IBT Mem. Supp. Mot. to Dismiss.)  Thus, it would seem perverse to award attorney fees in connection with defending against a claim made frivolous by existing precedent, yet the defendant nowhere argued or presented such an argument.

The court dismissed Counts IV, V and VI because it found that subsections (2) and (3) of § 1985 do not authorize relief from discrimination based on shared political views, which was the basis of the class of persons plaintiffs identified.  *See Adams*, No. 99-4910, slip. op. at 14-19.  The court specifically noted that, at that time, neither the Supreme Court nor the Third Circuit had addressed whether there may be a cause of action under § 1985(3) for discrimination on the basis of shared political views.  *Id.* at 15.  The court, however, followed the majority view of district courts in this circuit that political affiliation is an insufficient basis for a § 1985(3) action and dismissed Count V.  *Id.* at 16.  The court similarly dismissed Count IV, for failure to demonstrate "class-based discriminatory animus."  *Id.* at 17-18.  Accordingly, the court dismissed Count VI, for violation of § 1986, because such a claim is predicated on a violation of § 1985.  *Id.* at 18-19.  Because there was no definitive, binding source of law at that time, I do not find that plaintiffs' claims were legally frivolous.

Lastly, I note that the majority of the IBT's motion to dismiss concerned the defense against plaintiffs' state law claims for which the IBT asserts it does not seek attorney fees.  (*See* IBT Mem. Supp. Mot. to Dismiss.)  However, the IBT does not separate time spent on federal claims from time spent on the state claims, thus precluding the court from even determining a

reasonable amount of time spent defending against particular federal claims.

With respect to plaintiffs' remaining federal claim, I do not find that it was frivolous, unreasonable or groundless.  While ultimately plaintiffs were unsuccessful on their First Amendment claim, they had some basis for bringing it.  To prove the conspiracy necessary to sustain the state action element of their § 1983 claim for violation of the First Amendment, plaintiffs had to produce either direct or circumstantial evidence that Mayor Rendell and the defendant members of Local 115 came to a meeting of the minds that the union would behave in a threatening or violent manner toward the anti-Clinton demonstrators, which plaintiffs were ultimately unable to do.  Plaintiffs alleged facts that Mayor Rendell had personally invited the Teamsters to the event, the Teamsters were given some special treatment in the form of allowing them to park their buses and tractor-trailer in otherwise illegal locations, the Teamsters had a known reputation for violent conduct, Mayor Rendell and his agent and spokesperson, Kevin Feeley, made statements concerning the incident plaintiffs believed condoned the Teamsters' actions, and Mayor Rendell had a conversation with Morris concerning the events.  *See Adams*, 2003 U.S. Dist. LEXIS 15477, at **5-13.  Plaintiffs were only able to learn the contents of the conversations between Morris and Mayor Rendell, as well as other surrounding facts, through extensive discovery.  While ultimately these facts did not rise to the level to overcome summary judgment, the claim cannot be said to have been frivolous, unreasonable or groundless.  *See Burks v. City of Philadelphia*, 974 F. Supp. 475, 490 (E.D. Pa. 1997) (stating that although plaintiffs "had only a shadow of evidence to support their claim that the discrimination in the case was the product of the City's custom or policy" and therefore could not establish municipal liability, the court could not "characterize the claim as frivolous or unreasonable").  Keeping in

mind the animating principles of § 1988 and the desire of Congress for plaintiffs to bring

successful civil rights suits, and considering the facts and allegations in this case, I will decline to

award the Teamsters attorney fees.


**III. Costs**

As described above, plaintiffs originally objected to the Teamsters' motions for costs

filed with this court.  Subsequently, the clerk of court taxed certain costs against plaintiffs, but

dismissed others as not being statutorily authorized costs.  With respect to Local 115, the clerk of

court denied costs for attorney fees, costs associated with the routine overhead of running of a

law practice, attorney travel expenses, legal research costs, and postage costs.  Concerning the

bill of costs filed by Mayor Rendell, the clerk of court denied costs for attorney fees.  Lastly, with

respect to the bill of costs filed by the IBT, the clerk of court denied costs for attorney fees, costs

associated with the routine overhead of running of a law practice, attorney travel expenses, legal

research costs, and postage costs, and reduced costs related to witness fees.  Plaintiffs have now

filed objections to which the Teamsters have replied; Mayor Rendell has chosen not to file an

additional response.

Taken together, plaintiffs' papers contain several arguments against the imposition of

costs.  The taxation of costs by the clerk of court is subject to de novo review.  *Montgomery*

*County v. Microvote Corp*., 2004 U.S. Dist. LEXIS 8611, at *4 (E.D. Pa. May 13, 2004) (citing

*City of Rome, Italy v. Glanton*, 184 F.R.D. 547, 548 (E.D. Pa. 1999)).  I will address each of

plaintiffs' remaining objections in turn.

### A. Transfer of Claims to State Forum

Plaintiffs argue that because the court dismissed their state law claims without prejudice on jurisdictional grounds, the Teamsters have no lawful claim for those costs. Further, if the court were to decide any cost issue, plaintiffs argue that the fee shifting provision of 28 U.S.C. § 1919 governs this case, as the dismissal was based on lack of jurisdiction. This statute does not contain a presumption that fees and costs will be awarded as do § 1988 and Rule 54.[5] To the extent that the Teamsters seek any costs associated with plaintiffs' state law claims, I agree that those expenses are properly adjudicated by the state court upon the resolution of plaintiffs' state law claims. *See Callicrate v. Farmland Indus.*, 139 F.3d 1336, 1342-43 (10th Cir. 1998) (cited by *Hygienics Direct Co. v. Medline Indus.*, 33 F. App'x 621, 625 (3d Cir. 2002)) (awarding costs to one defendant, but directing district court to dismiss without prejudice the claim for costs associated with the merits of plaintiff's pending state law claim after district court had dismissed that claim for lack of jurisdiction, and finding that such costs would be determined by state court). However, the Teamsters do not argue that they are entitled to costs for their defense of plaintiffs' state law claims. Those were the only claims that were dismissed on jurisdictional grounds. Therefore, the application of § 1919 is irrelevant. Moreover, contrary to plaintiffs' contentions, their federal claims have indeed been decided on the merits, regardless of whether those claims arise out of similar facts as claims dismissed without prejudice on jurisdictional grounds.

---

[5]Section 1919 states: "Whenever any action or suit is dismissed in any district court, the Court of International Trade, or the Court of Federal Claims for want of jurisdiction, such court may order the payment of just costs." 28 U.S.C. § 1919.

### B.  Legal Standards for Prevailing Party Costs

Rule 54(d) declares that "costs other than attorney's fees shall be allowed as of course to the prevailing party unless the court otherwise directs[.]"  Fed. R. Civ. P. 54(d)(1).  Rule 54(d) creates a presumption that prevailing parties are entitled to costs.  *Delta Air Lines, Inc. v. August*, 450 U.S. 346, 352 (1981).  The losing party, therefore, bears the burden of showing why costs should not be taxed against it.  *Brightful v. Twp. of Haverford*, 1996 U.S. Dist. LEXIS 877, at *4 (E.D. Pa. Jan. 29, 1996) (citing *Pennsylvania v. Local Union 542*, 507 F. Supp. 1146, 1153 (E.D. Pa. 1980)).

The prevailing party test for Rule 54(d) is the same as the test under § 1988.  *Institutionalized Juveniles v. Sec'y of Pub. Welfare*, 758 F.2d 897, 926 (3d Cir. 1985) ("We agree with the Fifth Circuit's conclusion that the test for prevailing party status under Rule 54(d) should be the same as the test for prevailing party status under 42 U.S.C. § 1988 (1982).").  Accordingly, the discussion of prevailing parties in section II.A.1 applies here and defendants are prevailing parties for purposes of Rule 54(d).  *See Tyler v. O'Neill*, 112 F. App'x at 161 ("Where a defendant successfully defends against a plaintiff's substantial claims and judgment is entered accordingly, the defendant is generally considered the prevailing party for purposes of Rule 54(d)(1)."); *see also* 10 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 2667 (stating that "[u]sually the litigant in whose favor judgment is rendered is the prevailing party for purposes of Rule 54(d)").

Ultimately, the district court has the sound discretion to award or deny costs.  *Farmer v. Arabian Am. Oil Co.*, 379 U.S. 227, 233-34 (1964).  However, to overcome the presumption favoring the prevailing party and to deny that party costs, a district court must support that

15

determination with an explanation.  *In re Paoli R.R. Yard PCB Litig.*, 221 F.3d 449, 462-63 (3d Cir. 2000) (internal quotation omitted).  The court may consider "the unclean hands, or bad faith or dilatory tactics, of the prevailing party."  *Id.* at 463; *Smith*, 47 F.3d at 99 ("The denial of costs to the prevailing party . . . is in the nature of a penalty for some defection on his part during the course of the litigation.").  A court may also decline to award costs under Rule 54(d) if such an award would be inequitable.  *Smith*, 47 F.3d 9 at 99 (citation omitted).  The losing party bears the burden of making the showing that an award is inequitable under the circumstances.  *In re Paoli.*, 221 F.3d at 462-63.  Specifically, "if a losing party is indigent or unable to pay the full measure of costs, a district court may, but need not automatically, exempt the losing party from paying costs."  *In re Paoli.*, 221 F.3d at 464.  However, reducing a cost award based solely on a substantial disparity in the parties' financial resources exceeds a court's equitable discretion under Rule 54(d).  *Id.* at 468; *Smith*, 47 F.3d at 99.  And, a court may assess costs even against a plaintiff permitted to proceed *in forma pauperis*.  *Smith*, 47 F.3d at 100 (citations omitted).

Under 28 U.S.C. § 1920, the court may assess the following costs in any action, regardless of whether the action was brought under a fee-shifting statute:

(1) Fees of the clerk and marshal;

(2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;

(3) Fees and disbursements for printing and witnesses;

(4) Fees for exemplification and copies of papers necessarily obtained for use in the case;

(5) Docket fees under section 1923 of this title;

(6) Compensation of court appointed experts, compensation of interpreters, and

salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

§ 1920.  Under 28 U.S.C. § 1821, the witness fees and disbursements authorized by § 1920(3) are limited to witness fees of $ 40 a day, travel costs, and a subsistence allowance.  § 1821.

The Supreme Court has held that a court may not shift costs beyond those found in sections 1920 and 1821 without express statutory authorization to do so.  *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 444-45 (1987).  The Court has stated that sections 1920 and 1821 "define the full extent of a federal court's power to shift litigation costs absent express statutory authority to go further."  *W. Va. Univ. Hosps., Inc. v. Casey*, 499 U.S. 83, 86 (1991) (summarizing holding of *Crawford Fitting*).  As such, "while a prevailing party is awarded its costs, those costs often fall well short of the party's actual litigation expenses."  *In re Paoli*, 221 F.3d at 458 (citations omitted).  Further, "[i]tems proposed by winning parties as costs should always be given careful scrutiny."  *Farmer*, 379 U.S. at 235.

### C. Discussion

As the prevailing parties for purposes of Rule 54(d), the Teamsters have filed bills of costs.  Plaintiffs have lodged numerous objections to those costs.  The clerk of court has already denied costs with respect to attorney fees, expenses associated with the routine overhead of running of a law practice, attorney travel expenses, legal research costs and postage costs.  Plaintiffs' remaining objections concern costs associated with the IBT's and Mayor Rendell's taking of depositions, to which I will now turn.[6]

---

[6]In their reply to the Teamsters' opposition to their appeal, plaintiffs also argue, for the first time, that defendants are not entitled to costs under Rule 54(d) because that rule requires that costs be exclusively sought under § 1988.  (Pl.'s Reply to Def.'s Opp'n to Appeal 1.)  However, the Third Circuit has stated:  "Costs, unlike attorney's fees, are awarded to a prevailing party as a

**(i) Deposition Costs**

A prevailing party may be allowed costs for deposition transcripts that are reasonably necessary for the case. *See Herbst v. Gen. Accident Ins. Co.*, 2000 U.S. Dist. LEXIS 11952, at *5 (E.D. Pa. Aug. 21, 2000) (citing § 1920(2)). "It is sufficient that the depositions appear reasonably necessary to the parties in light of the particular situation existing at the time they were taken." *Montgomery County*, 2004 U.S. Dist. LEXIS 8611, at *20 (quoting *Smith v. Crown Equip. Corp.*, 2000 U.S. Dist. LEXIS 530, at *9 (E.D. Pa. Jan. 13, 2000)). Depositions that are used in support of a motion for summary judgment are necessarily obtained for use in the case, even if they were not essential to the court's resolution of the case. *Fitchett v. Stroehmann Bakeries*, 1996 U.S. Dist. LEXIS 1168, at **9-10 (E.D. Pa. Feb. 5, 1996). However, costs for depositions obtained for the convenience of counsel or for investigatory or discovery purposes, which are not used or intended for use at trial, may not be taxed. *Montgomery County*, 2004 U.S. Dist. LEXIS 8611, at **20-21.

**(ii) The IBT's Deposition Costs**

Plaintiffs object to the taxation of costs associated with deposition transcripts and witness fees for witnesses whose testimony was not used in the IBT's summary judgment motion. However, plaintiffs have produced no evidence to suggest that the depositions did not appear

---

matter of course, unless the district court directs otherwise. We do not believe that title VII carved out an exception to this rule." *Croker v. Boeing Co. (Vertol Div.)*, 662 F.2d 975, 998 (3d Cir. 1981) (en banc) overruled on other grounds, *Halderman v. Pennhurst State Sch. & Hosp.*, 673 F.2d 628, 644 (3d Cir. 1982) (en banc) (internal citation omitted)). District courts in this district have routinely approved the award of costs under Rule 54(d) independent of an attorney fee award pursuant to § 1988. *See, e.g., Solomen v. Redwood Advisory Co.*, 223 F. Supp. 2d 681, 688 (E.D. Pa. 2002); *Minnick v. Dollar Fin. Group, Inc.*, 2002 U.S. Dist. LEXIS 9115 (E.D. Pa. May 21, 2002).

"reasonably necessary" at the time they were taken.  In fact, the Teamsters point out, and

plaintiffs do not dispute in their reply, that many of the depositions to which plaintiffs object

were actually depositions taken by plaintiffs.  (Teamsters' Joint Opp'n to Pl.'s Appeal 8 & n.4.)

The fact alone that the depositions were not used in connection with the motion for summary

judgement is insufficient to overcome the presumption that costs will be taxed in favor of the

prevailing party.  Plaintiffs provide no specific reasons as to why any of the depositions were not

"reasonably necessary."  *See Greene v. Fraternal Order of Police*, 183 F.R.D. 445, 449 (E.D. Pa.

1998) (concluding that "an unsuccessful plaintiff may not overcome the presumption that it shall

pay costs by simply listing a series of undocumented allegations regarding the impropriety of

costs assessed").  As such, I will affirm the taxation of the clerk of court.

### (iii) Mayor Rendell's Deposition Costs

Plaintiffs argue that Mayor Rendell's bill of costs filed with the clerk of court does not

state the names of the deponents for which the costs are associated.  (Pl.'s Appeal of Costs 8.)

As such, plaintiffs cannot assess the charges incurred.  (*Id.*)  I agree.  Although Mayor Rendell

has not chosen to file a response to plaintiffs' appeal of the clerks taxation of costs, I will afford a

reasonable opportunity for Mayor Rendell to provide plaintiffs with the necessary information

and for plaintiffs to respond if any depositions were not "reasonably necessary to the parties in

light of the particular situation existing at the time they were taken."  *Montgomery County*, 2004

U.S. Dist. LEXIS 8611, at *20.


## IV.  Plaintiffs' Financial Status

Plaintiffs allege that they are of poor financial status, attaching declarations to that effect

to their opposition to the Teamsters' motions for attorney fees and costs.  Specifically, plaintiffs

each aver that they "subsist on part-time employment" that "barely covers [] living expenses" and

"liv[e] in debt." (Attach., Pl. Opp'n Att'y Fees.)  Additionally, Don Adams alleges that he has

substantial debt as a result of a chronic illness and recently diagnosed testicular cancer.  (*Id.*)  As

such, plaintiffs request the court consider their inability to pay any award to defendants, as

permitted pursuant to Rule 54(d).  (Pl. Opp'n Att'y Fees 17 n.10.)  Alternatively, they request

that, in the event the court awards attorney fees or costs in favor of defendants, defendants be

precluded from collecting on said costs until plaintiffs' state court action, including appeals, is

exhausted.  (Pl.'s Appeal of Costs 9.)

The Teamsters dispute plaintiffs' factual averments of poor financial status.  The

Teamsters assert that plaintiffs have failed to reveal that they have been the beneficiaries of

substantial internet-generated financial support, which they have used to finance the litigation,

and have sufficient financial wherewithal to litigate their state court action.  (Def.'s Opp'n to

Appeal of Costs 9-10.)  Moreover, they contend that Theresa Adams admitted in her deposition

that she quit her Probation Department job of ten years and that her counsel stated she was about

to complete paralegal school.  (*Id.* at 9.)  The Teamsters also object to the court's staying of

judgment until plaintiffs' state court action has reached final resolution because plaintiffs "are

effectively asking this Court to require the defendants to fund plaintiffs' state court action against

themselves." (*Id.* at 10.)

Because there is factual dispute with regard to the financial status of plaintiffs and

because I have the discretion to consider the potential inequity of an award in favor of

defendants, *see Smith*, 47 F.3d 9 at 99, I will hold a hearing to uncover facts about plaintiffs'

20

financial status, *see, e.g. Brightful*, 1996 U.S. Dist. LEXIS 877, at *6.  An appropriate order

follows.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DON ADAMS and
THERESA ADAMS,
Plaintiffs,

     v.

TEAMSTERS LOCAL 115,
EDWARD G. RENDELL, and
INTERNATIONAL BROTHERHOOD of
TEAMSTERS,
Defendants.

: : : : : : : :

CIVIL ACTION

NO. 99-4910

# ORDER

And now, this _____ day of July, 2007, upon consideration of the motions of Teamsters

Local 115 and the International Brotherhood of Teamsters for attorney fees and costs (Doc. Nos.

285, 288), plaintiffs' opposition thereto, plaintiffs' appeal from the clerk of court's taxation of

costs (Doc. No. 301), the joint response of the International Brotherhood of Teamsters and

Teamsters Local 115, and plaintiffs' reply thereto, it is hereby ordered that:

(1) Teamsters Local 115's motion for attorney fees and costs (Doc. No. 285) is DENIED;

(2) The International Brotherhood of Teamsters's motion for attorney fees and costs (Doc.

No. 288) is DENIED;

(3) Plaintiffs' appeal from the clerk of court's taxation of costs in favor of Mayor Rendell

is GRANTED only to the extent that Mayor Rendell may submit the names of persons deposed

for whom he has submitted costs within ten days from the date of this order; and

(4) Plaintiffs may respond to that submission within ten days thereafter, in accordance

with this memorandum and order;

(5) A hearing to resolve disputed factual issues with regard to plaintiffs' poor financial status will be held on September 25, 2007, at 2:00 P.M., in Courtroom 14B;

(6) The remainder of plaintiffs' appeal from the clerk of court's taxation of costs is DENIED.

_____ s/ William H. Yohn Jr. _____
William H. Yohn Jr., Judge
